UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| YOLANDA R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | CASE NO. C21-0416-MAT <br><br> ORDER RE: SOCIAL SECURITY DISABILITY APPEAL |

Plaintiff appeals a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff's application for disability benefits after a hearing before an administrative law judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1970.[1] Plaintiff has at least a high school education and previously worked as fast-food worker, housekeeper, and store laborer. AR 40. Plaintiff filed an application for Supplemental Security Income (SSI) on December 5, 2017, alleging disability beginning January 1, 2013. AR 28. The application was denied at the initial level and on

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

reconsideration. On March 14, 2019, the ALJ held a hearing and took testimony from Plaintiff and a vocational expert (VE). AR 48–96. At the hearing, Plaintiff amended the alleged onset date to December 5, 2017. AR 55. On May 14, 2019, the ALJ issued a decision finding Plaintiff not disabled. AR 28–42. Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on May 18, 2020 (AR 1–6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appeals this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings are supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). "Substantial evidence" means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold the ALJ's decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## DISCUSSION

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 416.920 (2000).

At step one, the ALJ must determine whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 31.

At step two, the ALJ must determine whether a claimant suffers from a severe impairment.

The ALJ found Plaintiff has the following severe impairments: left shoulder and right hip degenerative joint disease; cervical and lumbar spine degenerative disc disease; diabetes mellitus; obesity; depressive disorder; personality disorder; post-traumatic stress disorder (PTSD); and substance abuse in remission. AR 31. The ALJ also found that the record contained evidence of the following conditions that did not rise to the level of severe impairment: neck pain; hypertension; abdominal pain; endometriosis; right knee pain; and hidradenitis suppurativa. AR 31–32.

At step three, the ALJ must determine whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Plaintiff's impairments did not meet or equal the criteria of a listed impairment. AR 32–34.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff able to perform sedentary work, as defined in 20 C.F.R. § 416.967(a), with the following limitations:

> [S]he will not engage in overhead reaching. She will frequently reach at or below shoulder level. She is capable of engaging in unskilled, repetitive, routine tasks in two-hour increments. She will have no contact with the public. She is capable of working in proximity to but not in coordination with co-workers. She will have occasional contact with supervisors. She will occasionally stoop and crouch. She will never squat, crawl, and kneel. She will never climb ramps, stairs, ropes, ladders, and scaffolds. She will be nine percent less productive than the average worker in the workplace. She will have six unscheduled absences from work per year.

AR 34. With that assessment, the ALJ found Plaintiff unable to perform any past relevant work. AR 40.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant

ORDER
PAGE - 3

retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of a VE, the ALJ found Plaintiff capable of performing other jobs, such as work as document preparer, final assembler, and table worker. AR 41.

Plaintiff raises the following issues on appeal: (1) Whether the ALJ erred in failing to properly address the opinions of the consultative examiner, independent psychological examiner, and Plaintiff's treating mental health providers; and (2) whether substantial evidence supports the ALJ's conclusion that the Plaintiff had the residual functional capacity to stay on-task nine-one percent of the time and maintain regular attendance with the exception of six absences per year. Plaintiff requests remand for further administrative proceedings. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

**1. Medical Opinions**

The regulations effective March 27, 2017, require the ALJ to articulate how persuasive the ALJ finds medical opinions and to explain how the ALJ considered the supportability and consistency factors.[2] 20 C.F.R. §§ 404.1520c(a)–(b), 416.920c(a)–(b). The regulations require an ALJ to specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2).

Further, the Court must continue to consider whether the ALJ's analysis is supported by substantial evidence. *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

---

[2] The Ninth Circuit has not yet addressed the 2017 regulations in relation to its standard for the review of medical opinions.

ORDER
PAGE - 4

Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *see also Zhu v. Comm'r of Soc. Sec. Admin.*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (applying the substantial evidence standard under the 2017 regulations). With these regulations and considerations in mind, the Court proceeds to its analysis of the medical evidence in this case.

    A. <u>Dr. Michael Clark, M.D.</u>

Dr. Clark examined Plaintiff on May 22, 2018, and opined that Plaintiff is unimpaired in her ability to perform simple and repetitive tasks and in her ability to accept instructions from supervisors and that Plaintiff "would probably not have extensive difficulty performing detailed and complex tasks." AR 775. Dr. Clark further opined that Plaintiff "might have difficulty interacting with coworkers and the public," that Plaintiff "might well have difficulty performing on a consistent basis without special or additional instructions," that Plaintiff "would likely have difficulty maintaining regular attendance, and completing a normal workday/workweek without interruptions from a psychiatric condition," and that Plaintiff "would have somewhat more difficulty dealing with the usual stress encountered in the workplace with most individuals." AR 775–76.

The regulations require the ALJ to articulate the persuasiveness of each medical opinion and explain how the ALJ considered the supportability and consistency factors for that opinion. 20 C.F.R. § 416.920c(a)–(b). The ALJ found Dr. Clark's opinion less persuasive than the opinion of Dr. Christmas Covell, Ph.D., regarding Plaintiff's mental limitations. AR 39. Specifically, the ALJ found that Dr. Clark's opinion that Plaintiff "might have difficulty or would likely have difficulty performing some mental functional activities in the areas of social interaction, adaptation, pace, attendance, and completing a normal workday" to be "not vocationally specific limitations because Dr. Clark did not explain define [sic] such terms as 'difficulty' or describe the

ORDER
PAGE - 5

most that the claimant could perform in any specific functional area." AR 39.

    Plaintiff argues that the ALJ erred because Dr. Clark "provided adequate information regarding the Plaintiff's ability to function in a work setting." Dkt. 11, at 5. An ALJ may properly reject a physician's opinion where the physician did not provide useful statements regarding the degree of the claimant's limitations. *See Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding that the ALJ properly rejected a physician's opinion where physician characterized the claimant's limitations as "limited" or "fair"). Here, Dr. Clark described that Plaintiff "might have difficulty," "would likely have difficulty," and "would have somewhat more difficulty" in her ability to interact with coworkers and the public, performing work activities, maintaining regular attendance, completing a normal workday/workweek, and dealing with the stress in the workplace. AR 775–76. Dr. Clark's equivocal statements regarding Plaintiff's limitations are not reasonably useful to determining the degree of Plaintiff's functional limitations. *See Khal v. Berryhill*, 690 Fed. Appx. 499, 501 (9th Cir. 2017) (finding a physician's opinion that the plaintiff was "probably incapable of work" to be equivocal and less compelling). Therefore, the ALJ reasonably conclude that these characterizations were inadequate for determining the RFC. *See Ford*, 950 F.3d at 1156. Plaintiff has not shown that ALJ erred.

    Plaintiff next argues that, because the ALJ found Dr. Clark's characterizations inadequate, the ALJ was under a duty to develop the record. Dkt. 11, at 5–6. "An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001). Here, the ALJ did not find that the evidence was ambiguous or that the record was inadequate to evaluate the evidence. Rather, the ALJ found persuasive Dr. Covell's opinion, who assessed limitations that conflicted with those assessed by Dr. Clark. *See Treichler v. Comm'r of*

ORDER
PAGE - 6

*Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (the ALJ is responsible for assessing the medical evidence and resolving any conflicts or ambiguities in the record). Therefore, the ALJ was not under a duty to develop the record further, and the ALJ did not err.

Even if the ALJ erred in evaluating Dr. Clark's opinion, this error was harmless because it was inconsequential to the ultimate non-disability determination. *See Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (ALJ's error may be deemed harmless where it is "'inconsequential to the ultimate nondisability determination'" (citation omitted)), *superseded by regulation on other grounds*. The ALJ included limitations in the RFC that reflected Dr. Clark's opinion that Plaintiff would have difficulty performing some mental functional activities in the areas of social interaction, adaptation, pace, attendance, and completing a normal workday by limiting Plaintiff to no contact with the public, to working not in coordination with co-workers and with occasional interaction with supervisors, to being nine percent less productive than the average worker, and to having at least six unscheduled absences from work per year. AR 34. "The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015; *see also Turner v. Comm'r of Soc. Sec. Admin.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (an RFC finding need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing RFC limitations entirely consistent with, even if not identical to, limitations assessed by the physician). Because the ALJ assessed RFC limitations that were entirely consistent with the stricter limitations opined by Dr. Clark, any error in the ALJ's evaluation of Dr. Clark's opinion was harmless.

B. <u>Dr. Shawn Kenderdine, Ph.D.</u>

Dr. Kenderdine evaluated Plaintiff in July 2017 and assessed Plaintiff with marked limitations in her ability to understand, remember, and persist in tasks by following detailed

ORDER
PAGE - 7

instructions and in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. AR 572. Dr. Kenderdine further assessed Plaintiff with moderate limitations in her ability to learn new tasks; make simple work-related decision; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; complete a normal work day and work week without interruptions from psychologically based symptoms; and set realistic goals and plan independently. AR 572.

The ALJ found Dr. Kenderdine's opinion less persuasive than the opinion of Dr. Covell, finding that Dr. Kenderdine "had little foundation upon which to base his opinion beyond the claimant's subjective report at the time of the evaluation" and "provided no specific rationale for each of his proposed mental functioning limitations," that the doctor's assessed limitations were inconsistent with his own mental status examination, and that the doctor's opinion "is not entirely consistent with the longitudinal record." AR 39.

Plaintiff argues that the ALJ erred by rejecting Dr. Kenderdine's opinion by finding that it lacked foundation and that the doctor apparently relied on Plaintiff's subjective reports. Dkt. 11, at 7. Plaintiff further argues that the ALJ erred by finding Dr. Kenderdine's opinion inconsistent with the doctor's own examination findings. *Id.* at 10. Under the supportability factor, the ALJ considers how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s)" in determining that opinion's persuasiveness. *See* 20 C.F.R. § 416.920c(c). Here, Dr. Kenderdine performed clinical tests during the exam and found that Plaintiff had abnormal limits in the areas of thought process and content, memory, fund of knowledge, concentration, and insight and judgment and normal limits in the areas of orientation, perception, and abstract thought. AR 573–74. Dr. Kenderdine further found

that Plaintiff had frequent and severe depression with mood, sleep, energy, and appetite disturbances, moderate levels of guilt and anhedonia, decreased sleep, and mildly increased irritability levels, and that, per Plaintiff responses the Beck Depression Inventory, Plaintiff had moderate difficulties with decision making and sustained concentration. AR 570. Dr. Kenderdine's clinical findings are not clearly inconsistent with the doctor's assessment of marked and moderate limitations and there is no indication that the doctor relied on Plaintiff's self-reports more heavily than the clinical findings. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) ("[W]hen an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion."). Therefore, the ALJ did not reasonably discount Dr. Kenderdine's assessed limitations by finding that it lacked foundation and was inconsistent with the doctor's own findings.

Plaintiff next argues that the ALJ erred by finding that Dr. Kenderdine's opinion was inconsistent with the longitudinal record. Dkt. 11, at 11–13. An ALJ properly rejects a physician's opinion that is inconsistent with the claimant's level of activity. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001). The ALJ found that Dr. Kenderdine's opinion was inconsistent with evidence of Plaintiff's level of activity, including attending school and driving a car. AR 39. The records cited by the ALJ indicate that Plaintiff was able to drive a car, was taking educational classes in basic math and writing, that she arrived on time to appointments, and that she was doing well in school. AR 39 (citing AR 777, 842). Plaintiff further testified at the hearing that she stopped driving because she lost her car, that she attends school two to three hours a day, and that, although she is not comprehending the math classes, she is doing well in her English courses. AR 56, 68. Based on this evidence, the ALJ could reasonably find that Plaintiff's activities are inconsistent Dr. Kenderdine's assessment of moderate and marked limitations in functioning, including

ORDER
PAGE - 9

limitations on Plaintiff's ability to perform activities within a schedule, maintain regular attendance, learn new tasks, be aware of normal hazards, complete a normal work day, and set realistic goals. The ALJ, therefore, reasonably found that Plaintiff's level of activity was inconsistent Dr. Kenderdine's assessment of marked and moderate limitations in functioning, and Plaintiff has not shown that the ALJ erred.

Plaintiff next argues that the ALJ erred by referring to Plaintiff's generally adequate performance on mental testing and unremarkable mental status examinations. Dkt 11, at 11–12. An ALJ properly rejects an opinion that is inconsistent with the record. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). The mental examinations cited by the ALJ included diagnoses of PTSD and depression, which diagnoses are not inconsistent with Dr. Kenderdine's findings and diagnoses. *See* AR 596, 774. Further, the ALJ cites mental health progress notes and other medical treatment notes buts fails to specify how these records are inconsistent with Dr. Kenderdine's findings. Indeed, the cited treatment records include notations that Plaintiff was oriented and had appropriate mood and affect; yet Dr. Kenderdine also found that, during the mental examination, Plaintiff presented with euthymic mood and affect and normal orientation. These records are not reasonably inconsistent with Dr. Kenderdine's findings, and the ALJ fails to specify how these findings are inconsistent with Dr. Kenderdine's assessment regarding Plaintiff's ability to function in a work setting. Therefore, the ALJ did not reasonably reject Dr. Kenderdine's opinion based on finding the doctor's opinion inconsistent with the medical record.

Although, as described above, the ALJ erred by discounting Dr. Kenderdine's opinion by finding that it lacked foundation and was inconsistent with the medical records showing adequate or unremarkable mental health findings, the ALJ nevertheless reasonably discounted Dr. Kenderdine's assessment of Plaintiff functional limitations by finding it inconsistent with

ORDER
PAGE - 10

Plaintiff's level of activity. Further, the ALJ's RFC limited Plaintiff to unskilled tasks and provided that Plaintiff would be nine percent less productive than the average worker and would have up to six unscheduled absences a year. AR 34. These limitations are reasonably consistent with the marked and moderate limitations assessed by Dr. Kenderdine. *See Turner*, 613 F.3d at 1223 (an RFC finding need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing RFC limitations entirely consistent with, even if not identical to, limitations assessed by the physician). Therefore, any error in the ALJ's evaluation of Dr. Kenderdine's opinion was harmless because it was inconsequential to the ultimate non-disability determination. *See Molina*, 674 F.3d at 1115.

    C. <u>Ashley Turner, MHP, and Sandra Walker, M.D.</u>

On January 23, 2019, Ms. Turner, Plaintiff's treating mental health clinician, provided a written statement that noted that Plaintiff was being treated for PTSD and unspecific depressive disorder. AR 896. Ms. Turner identified that Plaintiff was experiencing symptoms of "nightmares, becoming easily flustered, ruminating on traumatic experiences, excessive shame and guilty [sic], depression, and anxiety." AR 896. Ms. Turner opined that Plaintiff's symptoms "continue to be bothersome and interfere with her daily activities" and recommended that Plaintiff received SSI benefits. AR 896. By letter faxed March 13, 2018,[3] Dr. Sandra Walker, M.D., Plaintiff's treating psychiatrist, noted that she reviewed Ms. Turner's letter and concurred with Ms. Turner's assessment. AR 897. Dr. Walker further noted that Plaintiff experiences symptoms of anxiety and dysphoria related to her PTSD and depression, but that Dr. Walker's work with Plaintiff "has not

---

[3] Although Dr. Walker's letter is dated March 13, 2013, the parties agree that this appears to be a typographical error. *See* Dkt. 11, at 13; Dkt. 12, at 14 n.4.

specifically included an assessment for employability." AR 897.[4]

The ALJ found the statements by Ms. Turner and Dr. Walker less persuasive than the opinion of Dr. Covell, finding that Ms. Turner "failed to provide any information regarding the claimant's ability to mentally perform vocationally specific functional activities," that Dr. Walker "merely agreed with Ms. Turner's opinion," and that Dr. Walker stated that she has not assessed Plaintiff's employability. AR 40.

Plaintiff argues that Ms. Turner and Dr. Walker's statements "should be considered highly probative"[5] and that "[t]here is no requirement that an opinion contain 'vocationally specific limitations.'" Dkt. 11, at 14. Plaintiff argues that the ALJ failed to consider "probative information" that Plaintiff "was struggling with daily activities to a degree that the treating provider believed that SSI support was warranted." *Id.* at 14–15. An ALJ is not required to provide clear and convincing reasons to reject a physician's statement when the statement did not assess specific limitations in relation to an ability to work. *See Turner*, 613 F.3d at 1223; *see also Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."). Here, neither Ms. Turner nor Dr. Walker assessed specific limitations in relation to Plaintiff's ability to work—indeed, Dr. Walker specifically noted that she did not assessed Plaintiff's employability. Further, opinions that a claimant is "disabled" or "unable to work" are issued reserved to the Commissioner. *See* 20 C.F.R. § 416.927(d)(1). Therefore, the ALJ did not err by

---

[4] The ALJ also reviewed a May 2018 statement by Ms. Ashton-Turner and an October 2018 statement by Dr. Walker; however, Plaintiff does not challenge the ALJ's evaluation of these statements. *See* Dkt. 11, at 13–15.

[5] To the extent that Plaintiff argues that the opinion of Plaintiff' treating physicians are entitled to more weight, this argument is unpersuasive. Under the new regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including those of examining or treating physicians. 20 C.F.R. § 416.920c(a).

ORDER
PAGE - 12

finding Ms. Turner and Dr. Walker's statements less persuasive by finding that providers failed to assess specific vocational limitations.

### D. <u>Dr. Christmas Covell, Ph.D.</u>

In June 2018, state agency consultant Dr. Covell opined that Plaintiff was moderately limited in her ability to understand, remember, and carry out detailed instruction; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to work in coordination with or in proximity to others without being distracted by them, distracting them, or exhibiting behavioral extremes; to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonably number and length of rest periods; and to interact appropriately with the general public. AR 208–10. Dr. Covell assessed no significant limitations in all other areas and opined that Plaintiff is capable of carrying out short and simple instructions on a regular basis while retaining concentration and attention for extended two-hour or more segments, was able to work in an independent work setting requiring only quick and short social demands and interactions with the general public and coworkers, and can interact with a supervisor to ask and accept simple instructions. AR 209–10.

The ALJ found Dr. Covell's opinion the "most persuasive opinion" finding that the doctor had an opportunity to review a significant portion of the record, pointed to evidence of record to substantiate her opinion, and that the doctor's opinion was consistent with the longitudinal record. AR 39.

Plaintiff argues that the ALJ failed to provide adequate explanation for preferring Dr. Covell's opinion and that the ALJ's references to the record were too vague to support the

ORDER
PAGE - 13

ALJ's findings. Dkt. 11, at 16. In finding Dr. Covell's opinion consistent with the longitudinal record, the ALJ referred to his findings at step four and his discussion of the medical evidence. AR 39. In reviewing an ALJ's decision, the Court considers the ALJ's decision as a whole and not solely the portion of the decision addressing a physician's opinion, the weight assigned the opinion, and the reasons for the weight assignment. *See Magallanes*, 881 F.2d at 755 ("As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."); *see also Rice v. Barnhart*, 384 F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read the ALJ's decision as a whole, and because it would be a needless formality to have the ALJ repeat substantially similar factual analyses at both steps three and five, we consider the ALJ's treatment of the record evidence in support of both his conclusions at steps three and five.") (internal citation omitted). Accordingly, the ALJ properly referred to his prior discussion of the medical evidence, including evidence that Plaintiff was able "to ask for help when she needed it, to identify barriers to recovery and eliminate them from her life, and employ coping strategies such as keeping busy with school and her kids." AR 36.

Even if the ALJ improperly discounted evidence from Drs. Clark and Kenderdine's opinions as discussed above, this error was harmless because the RFC accounted for the stricter limitations opined by Drs. Clark and Kenderdine. Indeed, the ALJ adopted RFC limitations that were stricter than Dr. Covell's limitations, including limiting Plaintiff to engaging in tasks in only two-hour increments, no contact with the public, not working in coordination with co-workers, and occasional interaction with supervisors. AR 34. Therefore, even if the ALJ erred in evaluating the medical evidence and finding Dr. Covell's opinion the most persuasive, this error was harmless because the RFC accounted for stricter limitations than opined by Dr. Covell. *See Molina*, 674 F.3d at 1115.

ORDER
PAGE - 14

**2. RFC**

At step four, the ALJ must identify the claimant's functional limitations or restrictions and assess his work-related abilities on a function-by-function basis. See 20 C.F.R. § 416.945; SSR 96-8p. The RFC is the most a claimant can do considering his limitations or restrictions. See SSR 96-8p. The ALJ must consider the limiting effects of all of the claimant's impairments, including those that are not severe, in assessing the RFC. 20 C.F.R. § 416.945(e); SSR 96-8p.

Plaintiff argues that the ALJ erred by including limitations in the RFC that limited Plaintiff to being nine percent less productive than other workers and that she would be absent from work six times per year. Dkt. 11, at 17 (citing AR 34). The ALJ is responsible for "translating and incorporating clinical findings into a succinct RFC." *Rounds*, 807 F.3d at 1006. Accordingly, an RFC finding need not directly correspond to a specific medical opinion but may incorporate the opinions by assessing RFC limitations entirely consistent with, even if not identical to, limitations assessed by the physician. *Turner*, 613 F.3d at 1223 (the ALJ properly incorporates medical findings by assessing limitation that are "entirely consistent" with a physician's limitations). Here, Dr. Kenderdine assessed that Plaintiff would have marked or moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision and in her ability to complete a normal work day and work week without interruptions from psychologically based symptoms. AR 572. Similarly, Dr. Clark opined that Plaintiff would likely have difficulty maintaining regular attendance and completing a normal workday/workweek without interruptions from a psychiatric condition secondary to its ongoing nature and apparently ongoing symptomatology." AR 775–76. Although the ALJ found the opinions of Drs. Kenderdine and Clark less persuasive than the opinion of Dr. Covell, as discussed above, the ALJ did not err by translating the stricter limitations assessed

by Drs. Kenderdine and Clark in the RFC and finding that Plaintiff will be nine percent more productive than average and absent six times a year.

Even if the ALJ erred by assessing the RFC limitation regarding Plaintiff's productivity level and absenteeism, this error would be harmless because the VE testified that an individual with Plaintiff's limitations could maintain employment with six absences per year and with lower productivity than articulated in the ALJ's RFC. AR 93. Specifically, the VE testified that employers in unskilled industries are willing to tolerate people being off-task or having slowed or reduced productivity up to about ten percent of the time. AR 93–94. Further, Plaintiff has not identified any evidence to suggest that Plaintiff would be more than nine percent less productive than the average worker, would require more than six days of absenteeism a year, or that these limitations otherwise affect the ALJ's non-disability determination. Rather, Plaintiff acknowledges that "[t]he ALJ could simply omit these limitations in his adopted RFC." Dkt. 11, at 18. Therefore, any error in the ALJ's inclusion of the productivity and absenteeism limitations in the RFC is harmless because it is inconsequential to the non-disability determination. *See Molina*, 674 F.3d at 1115.

## CONCLUSION

For the reasons set forth above, this matter is AFFIRMED.

DATED this 10th day of January, 2022.

MARY ALICE THEILER
United States Magistrate Judge